**BEER NUTS, INC., Plaintiff-Appellant, Cross-Appellee,**

v.

**CLOVER CLUB FOODS COMPANY, Defendant-Appellee, Cross-Appellant.**

Nos. 81–1545, 81–1600.

United States Court of Appeals, Tenth Circuit.

June 22, 1983.

**936**

Robert M. Newbury, Chicago, Ill. (Craig S. Fochler of Pattishall, McAuliffe & Hofstetter, Chicago, Ill., and Robert R. Mallinckrodt of Mallinckrodt & Mallinckrodt, Salt Lake City, Utah, with him on the brief), of Pattishall, McAuliffe & Hofstetter, Chicago, Ill., for plaintiff-appellant, cross-appellee.

R. William Johnston, Pasadena, Cal. (Richard D. Seibel of Christie, Parker & Hale, Pasadena, Cal., and Stephen H. Anderson of Ray, Quinney & Nebeker, Salt Lake City, Utah, with him on the brief), of Christie, Parker & Hale, Pasadena, Cal., for defendant-appellee, cross-appellant.

Before BARRETT, McKAY and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Beer Nuts, Inc. (Beer Nuts) sued Clover Club Foods (Clover Club) alleging trademark infringement under 15 U.S.C. § 1114 (1976), unfair competition under 15 U.S.C. § 1125 (1976),[1] and a pendent claim of state law trademark infringement. These claims arose from Clover Club's use of the words "Brew Nuts" with a picture of an overflowing stein on packages containing a sweetened, salted peanut product virtually identical to a product sold by Beer Nuts. Clover Club counterclaimed, seeking a declaration that Beer Nuts' registered trademark is void. After a bench trial, the district court denied relief to both parties and both parties have appealed. We reverse and remand for further proceedings. 520 F.Supp. 395.

---

1. All statutory section references will be to sections of Title 15 of the United States Code unless otherwise indicated.

## I.

### TRADEMARK USE

The term "Beer Nuts" was registered as a trademark in 1955 and has become incontestable under section 1065.[2] Beer Nuts claims that its right to the exclusive use of its trademark has been infringed because Clover Club's use of the term "Brew Nuts" together with an overflowing stein constitutes a trademark likely to cause confusion. The district court stated in its memorandum opinion, however, that "Clover Club's use of the words 'Brew Nuts' is a description of its product rather than a trademark." Rec., vol. I, at 51.

The defenses to the claimed infringement of an incontestable trademark are codified in section 1115.[3] The "fair use" defense permits the use of a name or term, *other than as a trademark,* that is descriptive and is used fairly and in good faith only to describe the goods. § 1115(b)(4). This defense is not available if the alleged descriptive use is in fact a trademark use. *Soweco, Inc. v. Shell Oil Co.,* 617 F.2d 1178, 1187 (5th Cir.1980), *cert. denied,* 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981); *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 12–13 (2d Cir.1976).

We do not believe the district court's statement that "Brew Nuts" is used as a description rather than as a trademark was intended as a holding that Clover Club established a "fair use" defense under section 1115(b)(4). In the first place, Clover Club did not plead the "fair use" defense in its answer to the complaint, nor did it assert the defense as an issue in the pretrial order. Moreover, the district court made no findings that the descriptive use was accomplished "fairly and in good faith." *See* § 1115(b)(4); *cf. M.B.H. Enterprises v.*

---

**2.** Section 1065 provides in pertinent part:

"Except on a ground for which application to cancel may be filed at any time under subsections (c) and (e) of section 1064 of this title, . . . the right of the registrant to use such registered mark in commerce for the goods or services on or in connection with which such registered mark has been in continuous use for five consecutive years subsequent to the date of such registration and is still in use in commerce, shall be incontestable . . . ."

15 U.S.C. § 1065 (1976).

**3.** Section 1115(b) provides:

"If the right to use the registered mark has become incontestable under section 1065 of this title, the registration shall be conclusive evidence of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the affidavit filed under the provisions of said section 1065 subject to any conditions or limitations stated therein except when one of the following defenses or defects is established:

(1) That the registration or the incontestable right to use the mark was obtained fraudulently; or

(2) That the mark has been abandoned by the registrant; or

(3) That the registered mark is being used by or with the permission of the registrant or a person in privity with the registrant, so as to misrepresent the source of the goods or services in connection with which the mark is used; or

(4) That the use of the name, term, or device charged to be an infringement is a use, otherwise than as a trade or service mark, of the party's individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe to users the goods or services of such party, or their geographic origin; or

(5) That the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party or those in privity with him from a date prior to registration of the mark under this chapter or publication of the registered mark under subsection (c) of section 1062 of this title: *Provided, however,* That this defense or defect shall apply only for the area in which such continuous prior use is proved; or

(6) That the mark whose use is charged as an infringement was registered and used prior to the registration under this chapter or publication under subsection (c) of section 1062 of this title of the registered mark of the registrant, and not abandoned: *Provided, however,* That this defense or defect shall apply only for the area in which the mark was used prior to such registration or such publication of the registrant's mark; or

(7) That the mark has been or is being used to violate the antitrust laws of the United States."

15 U.S.C. § 1115(b) (1976).

**938**

*WOKY, Inc.,* 633 F.2d 50, 53–54 (7th Cir. 1980) (findings adequate).

■ In any event, the record clearly establishes that Clover Club used the words "Brew Nuts" in conjunction with an overflowing stein as a trademark. A term or symbol is used as a trademark when the producer uses it to identify the source of his goods to the public and to distinguish those goods from others. *See M.B.H. Enterprises,* 633 F.2d at 53–54. A trademark is a symbol that attracts public attention, is the most prominent element on the package, and dominates the package as a whole. *See Venetianaire Corp. v. A. & P. Import Co.,* 302 F.Supp. 156, 158–59 (S.D.N.Y.1969), *aff'd,* 429 F.2d 1079 (2d Cir.1970).

■ In this case, the words "Brew Nuts" are much larger than the other lettering on the package and in a different type style. The words are set off in a distinctive red-brown oval, outlined in dark brown and topped by a conspicuous white circle containing a picture of an overflowing beer stein. Below or above the oval, depending on the particular package, is the phrase actually used to describe the product: "sweetened salted peanuts." Furthermore, the president of Clover Club, Robert Sanders, testified repeatedly that Clover Club uses secondary trademarks on some of its

products in addition to the company name, and that "Brew Nuts" is such a trademark.[4]

Based on our examination of the Clover Club package, the testimony of Mr. Sanders as to the trademark nature of the "Brew Nuts" logo, and the fact that Clover Club did not contend below that the "Brew Nuts" logo is not a trademark, we conclude as a matter of law that Clover Club has deliberately used "Brew Nuts" as a trademark.

## II.

### INFRINGEMENT

The district court held that the "Beer Nuts" trademark was not infringed. Based solely on a side-by-side comparison of the Beer Nuts and Brew Nuts packages, the court determined that "the product packaging and wording are sufficiently unique so as to preclude any likelihood of confusion as to the *origin of* the competing products." Rec., vol. I, at 47 (emphasis in original). Beer Nuts argues that the trial court applied incorrect and incomplete legal standards in making this determination. A survey of the law applicable to the issue of infringement is necessary to provide a

---

4. For example, Sanders testified:

"Q. (BY MR. JOHNSTON) This is the question [from Sanders' deposition]: ....
You have told us that you selected the name Brew Nuts as a trademark for the sweet and salted peanuts. What names did you suggest for any of the other products?
Answer: The generic terms of the products.
Next question—.... So the sweetened salted one was the only one for which you felt the need of an additional trademark besides Clover Club?
You answered: Yes.
Do you recall being asked that question and giving that answer?
"A. Yes, I do.
"Q. And to what were you referring when you gave the answer?
"A. I was referring to the six or seven nut items that were then being sold under the Clover Club label.
"Q. And why did you say this was the only nut item that you decided to have carry a second trademark?

"A. I considered the other nut items really to be commodities and, therefore, I did not think there would be any value of putting a second mark on them.
"Q. And the product you sell in the Clover Club Brew Nuts package is not what you consider just a commodity?
"A. I consider it a specialty product." Rec., vol. V, at 360–62.
"Q. Did your advertising agency ever suggest to you the use of the term Ah Nuts?
"A. Yes.
"Q. And why did you select Brew Nuts instead of Ah Nuts?
"A. I just felt that Ah Nuts was not a good second trademark."
*Id.* at 389.
"Q. Mr. Sanders, I show you Plaintiff's Exhibit 28–B. Brew Nuts is the dominant trademark on that package, isn't it?
"A. I would say that the product itself is the dominant thing on the package, and that Brew Nuts is the dominant mark or fanciful term."
*Id.* at 393.

framework for our disposition of this contention.

■ "A trademark is a distinctive mark, symbol, or emblem used by a producer or manufacturer to identify and distinguish his goods from those of others." *Educational Development Corp. v. Economy Co.*, 562 F.2d 26, 28 (10th Cir.1977). "The strength or distinctiveness of a mark determines both the ease with which it may be established as a valid trademark and the degree of protection it will be accorded." *McGregor-Doniger Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1131 (2d Cir.1979). Trademark strength is measured by "its tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous, source." *Id.* The use of terms or marks falls into four broad categories for purposes of legal recognition: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. *Soweco*, 617 F.2d at 1183. Only the first two categories are relevant to the issues on appeal.[5]

■ A generic mark has been described as referring to " 'a particular genus or class of which an individual article or service is but a member.' " *Soweco*, 617 F.2d at 1183 (quoting *Vision Center v. Opticks Inc.*, 596 F.2d 111, 115 (5th Cir.1979), *cert. denied*, 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980)). Because a generic mark refers to a general class of goods, it does not indicate the particular source of an item. Consequently, such a mark receives no legal protection and may not be registered alone as a trademark. A term that was once a valid trademark may become generic through usage and popular acceptance, and thus no longer be eligible for registration, e.g., escalator, thermos. *See McGregor-Doniger*, 599 F.2d at 1131. A generic word, such as "cola" may be part of a valid trademark, e.g., Coca-Cola. Although the holder of such a valid trademark may not prevent another from incorporating the *generic* term into a trademark, e.g., Pepsi-Cola, he can prevent its use in a trademark which is so similar to his own that the whole name is likely to be confused with his trademark, e.g., Koka-Cola. *See Dixi-Cola Laboratories v. Coca-Cola Co.*, 117 F.2d 352, 355–60 (4th Cir.1941); *see also American Aloe Corp. v. Aloe Creme Laboratories, Inc.*, 420 F.2d 1248, 1251–53 (7th Cir.), *cert. denied*, 400 U.S. 820, 91 S.Ct. 37, 27 L.Ed.2d 47 (1970).

■ "A 'descriptive' term 'identifies a characteristic or quality of an article or service,' . . . as, for example, its color, odor, function, dimensions, or ingredients." *Soweco*, 617 F.2d at 1183 (quoting *Vision Center v. Opticks Inc.*, 596 F.2d at 115). Because a descriptive term is one which a competitor would likely need to use in describing his product,[6] the term does not indicate that a

---

**5.** Suggestive trademarks "subtly connote something about the products." *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 349 (9th Cir.1979). Although the distinction between descriptive and suggestive marks is uncertain, "[a] term is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of goods. A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods." *Abercrombie & Fitch Co. v. Hunting World*, 537 F.2d 4, 11 (2d Cir.1976) (quoting *Stix Prods. Inc. v. United Merchants & Mfrs. Inc.*, 295 F.Supp. 479, 488 (S.D.N.Y.1968)).

Trademarks that are fanciful or arbitrary "bear no relationship to the product or service with which they are associated," *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1184 (5th Cir. 1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981), and are therefore inherently distinctive. *AMF Inc.*, 599 F.2d at 349. Suggestive and fanciful or arbitrary

trademarks may be registered without proof of a secondary meaning. *Soweco, Inc.*, 617 F.2d at 1184; *see Abercrombie & Fitch*, 537 F.2d at 10–11.

These categories of trademarks are not relevant to the issues raised by the parties on appeal. Although Beer Nuts argued below that its trademark is suggestive, it does not urge this construction on appeal. *See* Reply Brief for Plaintiff-Appellant at 22 n. 7.

**6.** The district court stated its concern that Beer Nuts was seeking to confirm a right to the exclusive use of "the entire pool of descriptive terms covering sweetened, salted peanuts suggested for consumption with beer or other 'brew.' " Rec., vol. I, at 50. We agree with plaintiff that the lower court has misconceived the nature of the statutory protection afforded trademarks which Beer Nuts seeks to invoke. Beer Nuts cannot prevent Clover Club from using descriptive or generic words contained in

product comes from a single source. *Educational Development Corp.*, 562 F.2d at 28–29. Therefore, a trademark that is descriptive may be registered only if it has acquired a secondary meaning by becoming "distinctive of the applicant's goods in commerce." § 1052(f); *Soweco*, 617 F.2d at 1183. To establish a secondary meaning, it is not necessary to show that the public is aware of the name of the manufacturer of a product; it is sufficient if the public is aware that the product comes from a single, though anonymous, source.[7] *Union Carbide Corp. v. Ever-Ready Inc.*, 531 F.2d 366, 380 (7th Cir.), *cert. denied*, 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976); *National Nu Grape Co. v. Guest*, 164 F.2d 874, 877 (10th Cir.1947), *cert. denied*, 333 U.S. 874, 68 S.Ct. 903, 92 L.Ed. 1150 (1948).

■ Infringement of a trademark occurs when the use of a similar mark is likely to cause confusion in the marketplace concerning the source of the different products. *Vitek Systems, Inc. v. Abbott Laboratories*, 675 F.2d 190, 192 (8th Cir.1982). "The resolution of this issue requires the court to consider numerous factors to determine whether, under all the circumstances, there is a likelihood of confusion." *Id.* In making this determination, this court has used the criteria set out in *Restatement of Torts* § 729 (1938):

"(a) the degree of similarity between the designation and the trade-mark or trade name in
 (i) appearance;
 (ii) pronunciation of the words used;
 (iii) verbal translation of the pictures or designs involved;
 (iv) suggestion;
(b) the intent of the actor in adopting the designation;

(c) the relation in use and manner of marketing between the goods or services marketed by the actor and those marketed by the other;
(d) the degree of care likely to be exercised by purchasers."

*See Drexel Enterprises v. Richardson*, 312 F.2d 525, 528 (10th Cir.1962). Other courts have used some formulation of this same test. *See, e.g., Soweco*, 617 F.2d at 1185; *McGregor-Doniger*, 599 F.2d at 1130; *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir.1979); *Union Carbide Corp.*, 531 F.2d at 381–82; *Fotomat Corp. v. Cochran*, 437 F.Supp. 1231, 1242 (D.Kan.1977). The above list is not exhaustive and no one factor is determinative. The facts of a particular case may require consideration of other variables as well. *McGregor-Doniger*, 599 F.2d at 1130; *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961).

■ As set forth above, "[s]imilarity of the marks is tested on three levels: sight, sound, and meaning . . . . Each must be considered as [it] is encountered in the marketplace. Although similarity is measured by the marks as entities, similarities weigh more heavily than differences." *AMF Inc.*, 599 F.2d at 351; *Vitek Systems, Inc.*, 675 F.2d at 192.

"It is not necessary for similarity to go only to the eye or the ear for there to be infringement. The use of a designation which causes confusion because it conveys the same idea, or stimulates the same mental reaction, or has the same meaning is enjoined on the same basis as where the similarity goes to the eye or the ear. Confusion of origin of goods may be caused alone by confusing similarity in the meaning of the designations em-

---

the "Beer Nuts" trademark to describe the Clover Club product fairly and in good faith. However, Beer Nuts alleges that Clover Club is using "Brew Nuts" as a *trademark* and that this use is likely to cause confusion in the marketplace over the source of the Clover Club product. This allegation states a claim for which the trademark laws provide a remedy. 15 U.S.C. § 1114 (1976).

7. An " 'incontestable' mark under section 1065 cannot be challenged as lacking secondary meaning; such marks are conclusively presumed to be nondescriptive or to have acquired secondary meaning." *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1185 (5th Cir.1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981).

ployed. The whole background of the case must be considered." *Standard Oil Co. v. Standard Oil Co.,* 252 F.2d 65, 74 (10th Cir.1958) (footnotes omitted).

In evaluating similarity, "[i]t is axiomatic in trademark law that 'side-by-side' comparison is not the test." *Levi Strauss & Co. v. Blue Bell, Inc.,* 632 F.2d 817, 822 (9th Cir.1980); *American Home Products Corp. v. Johnson Chemical Co.,* 589 F.2d 103, 107 (2d Cir.1978); *James Burrough Ltd. v. Sign of Beefeater, Inc.,* 540 F.2d 266, 275 (7th Cir.1976); *Fotomat Corp.,* 437 F.Supp. at 1244. The marks "must be compared in the light of what occurs in the marketplace, not in the courtroom." *James Burrough Ltd.,* 540 F.2d at 275. "A prospective purchaser does not ordinarily carry a sample or specimen of the article he knows well enough to call by its trade name, he necessarily depends upon the mental picture of that which symbolizes origin and ownership of the thing desired." *Avrick v. Rockmont Envelope Co.,* 155 F.2d 568, 573 (10th Cir.1946). Therefore, the court must determine whether the alleged infringing mark will be confusing to the public when singly presented. *Id.* at 572–73; *American Home Products,* 589 F.2d at 107; *James Burrough Ltd.,* 540 F.2d at 275; *Union Carbide,* 531 F.2d at 382.

"Intent on the part of the alleged infringer to pass off its goods as the product of another raises an inference of likelihood of confusion ...." *Squirtco v. Seven-Up Co.,* 628 F.2d 1086, 1091 (8th Cir. 1980); *Alpha Industries v. Alpha Steel Tube & Shapes, Inc.,* 616 F.2d 440, 446 (9th Cir.1980). "[P]roof that a defendant chose a mark with the intent of copying plaintiff's mark, standing alone, may justify an inference of confusing similarity." *Sun-Fun Products, Inc. v. Suntan Research & Development Inc.,* 656 F.2d 186, 190 (5th Cir.1981). One who adopts a mark similar to another already established in the marketplace does so at his peril, *Fotomat Corp.,* 437 F.Supp. at 1243, because the court presumes that he "can accomplish his purpose: that is, that the public will be deceived."

*AMF Inc.,* 599 F.2d at 354; *Fotomat Corp.,* 437 F.Supp. at 1243. All doubts must be resolved against him. *American Home Products,* 589 F.2d at 107.

Also relevant to likelihood of confusion are the means by which the products are marketed. "Converging marketing channels increase the likelihood of confusion." *AMF Inc.,* 599 F.2d at 353. The possibility of confusion is greatest when products reach the public by the same retail outlets. *See generally Exxon Corp. v. Texas Motor Exchange,* 628 F.2d 500, 505–06 (5th Cir.1980); *Scott Paper Co. v. Scott's Liquid Gold, Inc.,* 589 F.2d 1225, 1229 (3d Cir.1978). Confusing similarity is most likely when the products themselves are very similar. *Exxon Corp.,* 628 F.2d at 505; *see Fotomat Corp.,* 437 F.Supp. at 1243–44.

Finally, the court must examine the degree of care with which the public will choose the products in the marketplace. " 'The general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods, is the touchstone.' " *McGregor-Doniger,* 599 F.2d at 1137 (quoting 3 R. Callman, *The Law of Unfair Competition, Trademarks and Monopolies* § 81.2, at 577 (3d ed. 1969) (footnote omitted)); *see Squirtco,* 628 F.2d at 1091. Buyers typically exercise little care in the selection of inexpensive items that may be purchased on impulse. Despite a lower degree of similarity, these items are more likely to be confused than expensive items which are chosen carefully. *Sun-Fun Products,* 656 F.2d at 191; *Fotomat Corp.,* 437 F.Supp. at 1244.

In this case, the district court's resolution of the infringement claim was improperly based solely on a side-by-side package comparison, although the parties presented evidence on other relevant factors, including Clover Club's intent in adopting the trademark "Brew Nuts," the manner in which Beer Nuts and Brew Nuts are marketed, and the degree of care purchasers exercise when buying the products.

See Restatement of Torts, § 729(b), (c), (d). Moreover, the court erroneously equated likelihood of confusion with similarity. *See AMF Inc.,* 599 F.2d at 350. Similarity must be considered along with the other factors set out in the Restatement to determine whether, under all the circumstances of the marketplace, confusion is likely. The court's failure to weigh all of the relevant factors in determining likelihood of confusion constitutes reversible error. Although we offer no opinion regarding the merits of this case, we remand for a proper evaluation of similarity and a reconsideration of likelihood of confusion under the correct legal standards and the evidence presented.

## III.

### THE COUNTERCLAIM

In its counterclaim, Clover Club sought cancellation of the "Beer Nuts" trademark on two grounds: that the term "Beer Nuts" was generic and thus was not entitled to registration; and that the "Beer Nuts" registration was fraudulently obtained.

 A trademark will be refused registration if it is "merely descriptive" of the goods of the applicant. § 1052(e). A "merely descriptive" term is a generic term. The courts have also equated a generic term with a "common descriptive name" as used in sections 1064(c) and 1065(4). *See Soweco,* 617 F.2d at 1183 n. 13. Title 15 provides that a trademark registration may be cancelled "at any time if the registered mark becomes the common descriptive name of an article or substance." § 1064(c).[8] Section 1065(4) provides that "no incontestable right [as defined in that section] shall be acquired in a mark which is the common descriptive name of any article or substance, patented or otherwise." In this case, the district court determined that

"Beer Nuts" is a descriptive term with a secondary meaning. The court's conclusion that the term "Beer Nuts" was not generic at the time of registration is supported by the record, and we uphold it on appeal.

 Section 1064(c) also provides that an incontestable trademark may be cancelled if its registration was obtained fraudulently. A court should not lightly undertake cancellation on the basis of fraud, *Robert V. Vance & Associates, Inc. v. Baronet Corp.,* 487 F.Supp. 790, 800 (N.D. Ga.1979), and the burden of proving fraudulent procurement of a registration is heavy, *see W.D. Byron & Sons v. Stein Bros. Manufacturing,* 377 F.2d 1001, 1003, 54 Cust. & Pat.App. 1442 (Cust. & Pat.App.1967). Any deliberate attempt to mislead the Patent Office must be established by clear and convincing evidence. *Money Store v. Harriscorp Finance, Inc.,* 689 F.2d 666, 670 (7th Cir.1982); *see also Wrist-Rocket Manufacturing Co. v. Saunders Archery Co.,* 516 F.2d 846, 852 (8th Cir.), *cert. denied,* 423 U.S. 870, 96 S.Ct. 134, 46 L.Ed.2d 100 (1975). "Statements of honest, but perhaps incorrect, belief or innocently inaccurate statements of fact are insufficient as are knowing misstatements which would have a *de minimus* effect on the validity of the service mark." *Five Platters, Inc. v. Purdie,* 419 F.Supp. 372, 384 (D.Md.1976).

 The district court denied Clover Club's claim to strike the "Beer Nuts" registration on the basis of fraud. However, the court made no findings or conclusions on this issue to indicate the factual and legal bases for its decision. Fed.R.Civ.P. 52(a) provides that "the court shall find the facts specially and state separately its conclusions of law thereon." In this case the court's failure to comply with Rule 52(a) on

---

**8.** Title 15 provides that a trademark can be cancelled:

"at any time if the registered mark becomes the common descriptive name of an article or substance, or has been abandoned, or its registration was obtained fraudulently or contrary to the provisions of section 1054 of this title or of subsections (a), (b), or (c) of section 1052 of this title for a registration here-

under, or contrary to similar prohibitory provisions of said prior Acts for a registration thereunder, or if the registered mark is being used by, or with the permission of, the registrant so as to misrepresent the source of the goods or services in connection with which the mark is used."

15 U.S.C. § 1064(c) (1976).

the fraudulent registration issue renders meaningful appellate review impossible. *See Squirtco*, 628 F.2d at 1092. On remand, the court should make appropriate findings of fact and conclusions of law on this issue.

The case is reversed and remanded for reconsideration of the likelihood of confusion under the legal standards set forth in this opinion, and for findings of fact and conclusions of law on the question whether the "Beer Nuts" trademark was obtained fraudulently.