**FOREMOST CORPORATION OF AMERICA, et al., Plaintiffs,**

v.

**James L. BURDGE and Housing, Inc., et al., Defendants.**

**No. 84–995–M Civil.**

United States District Court, D. New Mexico.

April 14, 1986.

Rodey, Dickason, Sloan, Akin & Robb, P.A., Ben M. Allen, Albuquerque, N.M., Ben M. Allen, Hatch, Beitler & Allen, Rio Rancho, N.M., for plaintiffs.

Louis J. Vener, Albuquerque, N.M., for defendants.

## MEMORANDUM OPINION AND ORDER

MECHEM, Senior District Judge.

This matter came on for bench trial on January 13, 1986. The suit involves claims of trademark infringement under 15 U.S.C. §§ 1051–1127 (the Lanham Act), unfair competition under 15 U.S.C. § 1125(a) and the common law, violation of New Mexico Unfair Practices Act, N.M.Stat.Ann. § 57–12–1 *et seq.* (1978), and breach of contract. Defendants have counterclaimed requesting cancellation of registration of plaintiffs' service mark "Foremost Home Brokers". Having considered the evidence, the proposed findings of fact and conclusions of law, and briefs, I find in favor of the plaintiffs and against the defendants on plaintiffs' claims and on defendants' counterclaim. This memorandum opinion shall constitute my findings of fact and

conclusions of law pursuant to Fed.R.Civ.P. 52.

Plaintiff, Foremost Home Brokers, Inc. (FHB) is a Michigan corporation and plaintiff Foremost Corporation of America (FCOA) is a Delaware corporation. Principal place of business for both plaintiffs is the State of Michigan. FHB is a wholly-owned subsidiary of FCOA. Defendant, James L. Burdge d/b/a Foremost Mobile Homes (FMH) resides in Albuquerque, New Mexico. Defendant Housing, Inc. d/b/a FMH is a New Mexico corporation with its principal place of business in Albuquerque, New Mexico. Defendant Burdge was president and principal shareholder of Housing, Inc.

FCOA is a holding company for a group of corporations engaged in providing insurance products and services to those who buy, sell, manufacture or finance mobile homes. Foremost Insurance Co. (FIC) is FCOA's flagship subsidiary. FIC is the nation's leading insurer of mobile homes. For over thirty years, the company has been a leader in the specialty insurance field, offering property, liability and lender's insurance for mobile homes in all states except Hawaii. On February 15, 1972, FIC obtained federal trademark registration for the service mark "Foremost" in script letters, for insurance services. On January 1, 1979, FIC assigned its registered service mark "Foremost" to FCOA. Plaintiffs continue using the script format in some of their businesses.

FHB has been, and now is, engaged in the mobile home brokerage business. On January 1, 1979, FCOA granted FHB a license to use and reproduce the trade name "Foremost" in connection with its services. On November 3, 1981, FHB obtained federal trademark registration for the service mark "Foremost Home Brokers", in block letters, for arranging for the advertising and sale of homes, and the acquisition of insurance and financing, with first use in commerce on February 8, 1979. FHB has marketed its services under the service marks "Foremost" and "Foremost Home Brokers".

FCOA and its subsidiaries have marketed their services under the name of "Foremost" throughout the United States. FCOA spent $1.5 million per year during 1981–84 and $1.7 million in 1985 in connection with advertising and promoting the service mark "Foremost". In 1982, FHB spent $600,000 for advertising and promotion of the word "Foremost", and in 1983, $1.3 million. Since its inception, FHB has required all agents and franchise owners to use a uniform system of advertising and promotion, all of which have emphasized the word "Foremost". The uniform system of advertising and promotion has emphasized the word "Foremost" in FHB's logo such that the word appears three times the size of any other words in the logo. Plaintiffs also use a logo of "interlocking F's" in which the two "F's" are inserted in a rectangle or square in such a manner that one is upside down and the other, right side up.

As a result of plaintiffs' efforts, FIC currently holds approximately 15% of the market for the insurance of mobile homes and approximately 30% of the market of the insurance of new mobile homes. FHB provided services and products to the buyers and sellers in the resale of more than 2,200 manufactured homes in 1984. By participating in the resale process, FHB was able to achieve the sale of Foremost physical damage, credit life insurance and home service protection plans on a high percentage of the homes. FHB has generated four to five million dollars per year in insurance premiums. FHB also provided financing for two-thirds of its sales through Foremost Financial Services Corporation finance programs.

Prior to April 22, 1981, defendants had been operating a mobile home brokerage business in Albuquerque, New Mexico under the name of "Housing Inc.". On or about April 27, 1981, plaintiffs entered into a franchise agreement with defendants. Pursuant to the franchise agreement, defendants began doing business as "Foremost Home Brokers". Prior to April 27, 1981, defendants had not used the name

"Foremost" in connection with the mobile home brokerage business in New Mexico. During the time the defendants were doing business under the franchise agreement as "Foremost Home Brokers", defendants advertised their mobile home brokerage business in direct mailings, newspapers and television, using forms of art work provided by plaintiffs. Additionally, defendants' employees used business cards and forms supplied by plaintiffs, all of which identified defendants' mobile home brokerage business by the name "FHB". The franchise agreement was terminated in October of 1983, and at that time, defendants ceased doing business under the name of "FHB".

After the franchise agreement had been terminated, defendants changed their name to FMH and continued doing business, and are now doing business at the same location where defendants were previously doing business under the franchise agreement as FHB. Defendants continued using the same employees, telephone number, and basic forms of advertisement. They continued using "Foremost" in their name, but ceased using the "interlocking F" logo and Foremost's registered slogan, "Your mobile home market place". The franchise agreement provided that:

> Upon termination ... of the franchise [defendants] ... shall (c) discontinue the use of the mark FOREMOST HOME BROKERS, all other proprietary marks, or any other designation or mark indicating or tending to indicate that the ... [defendant] is an authorized FOREMOST HOME BROKERS franchise owner; ... (g) refrain from taking any action that would indicate that the ... [defendant] is or formerly was an authorized FOREMOST HOME BROKERS franchise owner.

Subsequently, in 1984, plaintiffs reopened an FHB office in Albuquerque under new management and at a new location. This office uses FHB forms of advertisement, logos and slogans.

## Jurisdiction

Jurisdiction exists over the subject matter and the parties in this case under 15 U.S.C. § 1121, 28 U.S.C. §§ 1338 and 1332.

## Trademark Validity

■ Defendants' counterclaim challenges the validity of plaintiffs' trademark. I start with the counterclaim because whether the mark is registered or unregistered determines the degree of protection to which the mark is entitled. Defendants urge cancellation of registration of the service mark "Foremost Home Brokers" because they find the mark merely descriptive and registered less than five years before defendants filed the counterclaim. 15 U.S.C. § 1064; *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). For purposes of legal recognition, trademark terms fall into the following broad categories: generic, descriptive, suggestive, and arbitrary or fanciful. *Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 939 (10th Cir.1983). Registerability depends on the term's categorization. A descriptive term identifies a characteristic or quality of an article or service. *Id.* "Foremost" is merely descriptive and means "the first or most prominent one".

■ The descriptive term "Foremost" is incontestable (i.e. valid) if either it was registered for more than five years before the counterclaim was filed, *Park 'N Fly, supra,* or it has acquired a secondary meaning, 15 U.S.C. § 1052(f). Plaintiffs registered "Foremost" in script in 1972 and "FHB" in block letters in 1981. To determine whether plaintiffs' mark is incontestable due to the passage of time, I must decide which registration applies in this case. Defendants urge that the 1972 mark does not apply because it is in script style while FHB is in block letters. When a term is registered in a distinctive form other than typed capital letters, then additional applications are required to change the form. Gilson, *Trademark Protection & Practice*, § 3.04[1] (1985); *Application of Data Packaging Corp.*, 453 F.2d 1300, 1302 (C.C.P.A.1972). Thus, plaintiffs' 1972

"Foremost" registration does not shield the "FHB" registration because plaintiffs changed the display format in the later registration.

 While "FHB" is not incontestable because of the passage of time, it is incontestable because the mark has acquired a secondary meaning. To establish secondary meaning, plaintiffs must show that "the public is aware that the product comes from a single common, though anonymous, source." *Beer Nuts, Inc., supra* at 940. Whether a mark has acquired a secondary meaning is a question of fact. *J.M. Huber Corp. v. Lowery Wellheads, Inc.*, 778 F.2d 1467, 1470 (10th Cir.1985). Items of proof include: evidence of plaintiff's duration, extent and nature of use of the mark; advertising expenditures; direct evidence from the purchasing public; consumer surveys; ownership of prior registrations of the same mark; and defendant's intent. *Gilson, supra* at §§ 2.09[1], 2.09[3]. Here, plaintiffs' advertising expenditures, plaintiffs' 1972 trademark registration, testimony from the public, and defendants' intent in choosing the name FMH are particularly convincing evidence that "Foremost" had acquired a secondary meaning. As already noted, plaintiffs have spent considerable sums on advertising, and these expenditures have helped assure that the public recognizes them as major competitors in all aspects of mobile home resales and insurance. Plaintiffs registered "Foremost" in 1972 and identify five FCOA subsidiaries by that name. The word "Foremost", independent of any design depiction, has become a "collective mark" that indicates membership in the collective group of FCOA organizations. 15 U.S.C. § 1127. The public associated "Foremost" with mobile home-related services before plaintiffs registered the FHB service mark.

At trial, Joseph Berube and Cindy May testified that in selling their mobile homes in 1985, they got referrals to agents who were "Foremost" mobile home brokers. Both called FMH thinking that the agents worked for that company but then discovered that the agents they sought worked for FHB. This testimony suggests that the word "Foremost" connotes a particular agency to some Albuquerqueans interested in mobile home resales.

Finally, defendant Burdge's testimony that he deliberately used "Foremost" in his agency's name after termination of the franchise agreement is strong proof of secondary meaning. Burdge's deposition indicates that he chose the name to retain good will:

Q: Why did you start doing business as Foremost Mobile homes?

A: We had an ongoing brokerage business, and the name of Foremost we had spent a great deal of money on in this market place. . . .

Q: Did you use the word "Foremost" because you felt like it would help to retain the good will that you had built up while you were operating as Foremost Home Brokers?

A: Yes, . . .

Deposition of James L. Burdge, taken on Dec. 13, 1984 at p. 62. At trial, Burdge said that he chose the word "Foremost" and that the word had the advantage of being identified with the business under the franchise agreement. Burdge's testimony reveals that "Foremost" had meaning in the Albuquerque mobile home market place since Burdge retained the name for business reasons. Burdge's choice affirms secondary meaning.

To establish secondary meaning, plaintiffs bear the burden of proof, and if such an inference is raised, then the burden shifts to defendants. *Big O Tire Dealers v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1369 (10th Cir.1977); *Gilson, supra* at § 2.09[1]. Plaintiffs' evidence set out above created a presumption of secondary meaning. Defendants did not rebut the inference that the Albuquerque public associated "Foremost" with a particular mobile home sales agency. Thus, I deny defendants' counterclaim to cancel the FHB registration.

### Trademark Infringement

To show that defendants infringed plaintiffs' trademark, plaintiffs must prove that they had a valid registration and that there is a likelihood of confusion in the market place concerning the source of defendants' products. 15 U.S.C. § 1114(1)(a); *Beer Nuts, supra* at 940. I have already found FHB to be a valid registration, and I now find that defendants' FMH designation is likely to cause confusion in the market place. "Similarity of the marks is tested on three levels: sight, sound, and meaning...." *Beer Nuts, supra* at 940. Four general factors must be examined to determine whether there is likelihood of confusion:

(a) The degree of similarity between the designation and the trademark or trade name in

 (i) Appearance;

 (ii) Pronunciation of the word used;

 (iii) Verbal translation of the pictures or designs involved;

 (iv) Suggestion;

(b) The intent of the actor in adopting the designation;

(c) The relation and use and manner of marketing of the goods of the two parties;

(d) The degree of care likely to be exercised by purchasers.

*Id.*

Evaluating this case in terms of the four factors, first, the predominant word in both names, "Foremost", is the same; to the consumer, this similarity would outweigh any difference in printed style. Additional indexes of similarity include testimony at trial indicating that customers and employees referred to both FMH and FHB simply as "Foremost" and exhibits showing that "Foremost" in both firms' ads is printed in larger letters than the remainder of the name and that the two agencies' names as they appear in the Yellow Pages seem almost indistinguishable in comparison to those of other mobile home dealers. Second, defendants' intent to incorporate "Foremost" into its name as outlined above "standing alone, may justify an inference of confusing similarity." *Id.* at 941. Third, confusing similarity due to the use and manner of marketing the goods is most likely because the products themselves are very similar. *Id.* Finally, at trial defendants queried customers Berube and May to show that purchasers exercise considerable care in the sale of mobile homes because of the cost of the item, thus seeking to negate likelihood of confusion. While this may be true, the testimony also suggested that customers select a listing broker on the basis of casual information without carefully seeking information about many agencies. Considering the four factors, I find likelihood of confusion between FMH and FHB and therefore find that defendants infringed on plaintiffs' trademark.

### Remaining Claims

Because I have ruled for the plaintiffs on trademark infringement, I need not decide the other claims. In passing, plaintiffs would prevail under their 15 U.S.C. § 1125 claim of unfair competition even if I had found plaintiff's trademark registration invalid because this statute prohibits unauthorized use of the same designation as an unregistered trademark or of one confusingly similar thereto which falsely represents to the public that defendants' services originated with the plaintiffs'. The Tenth Circuit has employed the trademark infringement tests for secondary meaning and likelihood of confusion to decide § 1125 unfair competition claims. *J.M. Huber, supra; Big O Tires, supra.* My findings under these tests would be the same for unfair competition as they were for trademark infringement.

Finally, the franchise agreement prohibited the defendants using FHB proprietary marks or other designations indicating that defendants were authorized FHB franchise holders after termination of the agreement. This opinion finds "Foremost" to be plaintiffs' proprietary mark. Defendants' continued use of that mark and of forms of advertisement prepared by plaintiffs violates the franchise agreement.

## Remedies

15 U.S.C. § 1116 entitles plaintiffs to injunctive relief. I find that defendants' actions have irreparably damaged plaintiffs by confusing customers as to the origin of defendants' services and that plaintiffs have no adequate remedy at law.

 15 U.S.C. § 1117 awards attorney fees to the prevailing party in "exceptional cases". Defendants' intentionally confusing the public or wilfully infringing plaintiffs' trademark are such exceptional cases. *V.I.P. Foods, Inc. v. Vulcan Pet, Inc.,* 675 F.2d 1106, 1107 (10th Cir. 1982). I find that plaintiffs are entitled to attorney fees.

15 U.S.C. § 1117 also awards prevailing plaintiffs costs of the action, defendants' profits, and damages. While plaintiffs' complaint sought all three of these remedies, plaintiffs' proposed findings and conclusions only sought costs. Thus, I award plaintiffs the costs of the action. Now, Therefore,

**IT IS ORDERED** that judgment be entered in favor of the plaintiffs on their claim and on defendants' counterclaim and that plaintiffs recover reasonable attorney fees and costs.

**IT IS FURTHER ORDERED** that judgment shall be entered granting plaintiffs permanent injunctive relief. The defendants and their respective agents, servants, employees, successors and assigns, and all other persons acting in concert with them, or any of them, or each of them, are enjoined and restrained from continuing or resuming any of the following acts in connection with their mobile home brokerage business.

(A) Using FMH or the word "Foremost" or any other mark belonging to plaintiffs or any reproduction or colorable imitation of any part of them, as part of defendants' trade name or in connection with advertising defendants' services.

(B) Using the forms of advertising prepared by plaintiffs in connection with advertising or selling defendants' services.

(C) Using the words "Foremost", FMH and all other proprietary marks, or any other designation or mark indicating or tending to indicate that defendants are an authorized "Foremost Home Brokers" franchise holder.

(D) Taking any action that would indicate that the defendants are or formerly were an authorized FHB franchise owner.

**IT IS FURTHER ORDERED** that defendants are to:

(A) Destroy or surrender to plaintiffs all signs, stationary, letterheads, forms, manuals, printed matter and advertising containing the word "Foremost" and all other proprietary marks, or any similar names, marks or designations indicating or tending to indicate that defendants are an authorized FHB franchise owner.

(B) Discontinue all advertising the word "Foremost", including, without limitation, the removal of any signs from the defendants' office and premises which contain the word "Foremost" or other marks and the immediate removal from any mobile home then listed by the defendants for sale or lease or any signs or sign posts using the word "Foremost".

(C) Execute such instruments and take such steps as may be necessary or appropriate to delete the defendants' FMH listing in the Yellow Pages and any other directory, and to terminate any other listing which indicates that the defendants are or formerly were affilliated with FHB, as well as to delete any or all such use of any marks.

**IT IS FURTHER ORDERED** that defendants shall file with the court and serve on the plaintiffs, within thirty (30) days after service on defendants of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which the defendants have complied with the injunction.