**WOODROAST SYSTEMS, INC., Plaintiff,**

v.

**RESTAURANTS UNLIMITED, INC., Defendant.**

**Civ. No. 4–92–65.**

United States District Court, D. Minnesota, Fourth Division.

May 18, 1992.

David Richard Fairbairn, Thomas J. Stueber, Kinney & Lange, Minneapolis, Minn., for plaintiff.

Cecilia Marie Michel, Bruce Howard Little, Popham, Haik, Schnobrich & Kaufman, Minneapolis, Minn., Thomas Tyson, Bruce E. O'Connor, Thomas D. Theisen, F. Ross Boundy, Christensen, O'Connor, Johnson & Kindness, Seattle, Wash., for defendant.

## ORDER

DOTY, District Judge.

This matter is before the court on defendant's motion for summary judgment and plaintiff's motion for a preliminary injunction. Based on a review of the file, record and proceedings herein, the court denies defendant's motion for summary judgment and grants plaintiff's motion for a preliminary injunction.

## BACKGROUND

Plaintiff Woodroast Systems, Inc. ("WSI") owns and operates a restaurant in Minneapolis, Minnesota under the name "Shelly's Woodroast Restaurant." WSI also owns three United States Service Mark Registrations for restaurant services, each of which contains the phrase "woo-

droast."[1] WSI believes that its service marks are closely identified with Shelly's Woodroast Restaurant and its founder, Sheldon F. Jacobs.

Defendant Restaurants Unlimited, Inc. ("RUI") owns and operates twenty-two restaurants in seven states, including Palomino in Minneapolis, Minnesota. RUI uses the phrase "wood roasted" on some menus, including those at Palomino, to describe various food selections.[2]

WSI asserts three claims based on RUI's use of that phrase:

1. Service mark infringement in violation of 15 U.S.C. §§ 1051–1127;

2. False designation of origin in violation of 15 U.S.C. § 1125(a); and

3. Deceptive trade practices in violation of Minn.Stat. §§ 325D.43–48.

RUI moves for summary judgment on all of WSI's claims. RUI first contends that WSI's service mark infringement claim fails for three reasons: WSI's service marks are invalid because the combination of the terms "wood" and "roast" to describe foods roasted over a wood fire constitutes a generic use; RUI's use of the phrase "wood roasted" is a fair use under the Lanham Act; and RUI's use of that phrase does not create a likelihood of confusion between RUI's services and WSI. RUI similarly argues that WSI's claim pursuant to 15 U.S.C. § 1125(a) fails because RUI's description of various foods as "wood roasted" does not constitute a false designation of origin likely to cause confusion but rather a generic or fair use of that phrase. RUI finally argues that WSI's state law claim fails for the same reasons that its federal claims fail. RUI thus asks the court to dismiss WSI's complaint, declare that RUI's use does not infringe on

WSI's service marks or constitute an unfair or deceptive practice, hold that WSI's service marks are invalid and order the United States Trademark Register to cancel those marks.

WSI responds that material fact disputes exist concerning whether the service mark "woodroast" is generic, whether RUI's use of the term "wood roasted" is a fair use and whether the similarity between the phrases causes consumer confusion. WSI further moves for a preliminary injunction prohibiting RUI's use of the phrase "wood roasted" during the pendency of this action,[3] arguing that it is likely to succeed on the merits because the "woodroast" mark is both strong and incontestable. WSI further argues that it will be irreparably harmed by RUI's continued infringement and that the balance of equities favors an injunction because if granted, RUI would merely have to reprint it menus. WSI finally contends that an injunction would serve the public interest by preventing consumer confusion. The court will address each motion in turn.

### DISCUSSION

1. *RUI's Motion for Summary Judgment*

 Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This standard mirrors the standard for a directed verdict under Federal Rule of Civil Proce-

1. Those service marks are "Woodroast", registered on August 19, 1986, "The Original Shelly's Woodroast and Design", registered on that same date, and "Original Woodroast Cooking and Design", registered on April 21, 1987. For purposes of the present motions, the court will collectively refer to those marks as WSI's "woodroast" mark when the differences between the marks are immaterial.

2. RUI was also using the phrase "woodroast" in the menu at its Seattle Pantana restaurant, but

asserts that shortly after WSI notified it of the present action, RUI changed that phrase to "wood roasted."

3. WSI specifically requests that the court enter a preliminary injunction prohibiting RUI from using the phrase "wood roasted", or any other mark confusingly similar to WSI's "Woodroast", "the Original Shelly's Woodroast and Design" and "Original Woodroast Cooking and Design" marks pending resolution of the case.

dure 50(a), which requires the trial judge to direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Stated in the negative, summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552–53. With this standard at hand, the court will consider RUI's motion for summary judgment.[4]

## A. WSI's Claim of Service Mark Infringement

The relative strength of trademarks and service marks[5] is broken into four broad categories for purposes of legal recognition: (1) arbitrary or fanciful; (2) suggestive; (3) descriptive; and (4) generic. *See, e.g., Beer Nuts, Inc. v. Clover Club Foods Co.,* 711 F.2d 934, 939 (10th Cir.1983) (citing *Soweco, Inc. v. Shell Oil Co.,* 617 F.2d 1178, 1183 (5th Cir.1980)). The categorization of a given term is a factual determination, *WSM, Inc. v. Hilton,* 724 F.2d 1320, 1326 (8th Cir.1984) (citing *Soweco,* 617 F.2d at 1183 n. 12), involving the examination of two factors: (1) the distinctiveness of a mark; and (2) the extent to which the mark is recognized by the relevant consuming class. *See, e.g., Aveda Corp. v. Evita Marketing, Inc.,* 706 F.Supp. 1419, 1428 (D.Minn.1989) (citing 2 J. McCarthy, *Trademarks and Unfair Competition* § 11:1 (2d ed. 1984)). The distinctiveness of a mark is measured by its tendency to identify the services sold under the mark as emanating from a single, although possibly anonymous, source. *Beer Nuts,* 711 F.2d at 940 (citing *Union Carbide Corp. v. Ever-Ready, Inc.,* 531 F.2d 366, 380 (7th Cir.), *cert. denied,* 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976)). An arbitrary or fanciful mark is "a word, either unknown or completely out of common usage, coined for the sole purpose of identifying products in the market place." *Aveda,* 706 F.Supp. at 1428 (citing *Blisscraft of Hollywood v. United Plastics Co.,* 294 F.2d 694 (2d Cir.1961)). Those marks are deemed the strongest "because their inherent novelty creates a substantial impact on the buyer's mind." *Id.* Suggestive marks subtly indicate something about the product, thus a mark is deemed suggestive if it requires imagination, thought or perception to reach a conclusion concerning the nature of the goods. *Beer Nuts,* 711 F.2d at 939 n. 5. A descriptive mark immediately conveys characteristics, qualities or other features of a product and can be

---

**4.** The court further notes that RUI seeks summary judgment on several defenses on which it bears the burden of proof, including genericness and fair use, thus it is in the posture of a plaintiff seeking summary judgment on its affirmative claims.

**5.** The marks at issue in the present case are service marks rather than trademarks. Trademarks are marks used to distinguish one's goods from those of another while service marks are marks used to distinguish one's services from those of another. 15 U.S.C. § 1127. Service marks are "registrable in the same manner and with the same effect as are trademarks and when registered they shall be entitled to the protection provided in this chapter in the case of trademarks." *Id.* § 1053. Thus, for purposes of the present motions, the terms may be used interchangeably.

protected only if it has become distinctive by acquiring some secondary meaning. *General Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 625 (8th Cir.1987) (citing *Co–Rect Prods. v. Marvy! Advertising Photography*, 780 F.2d 1324, 1329 (8th Cir.1985)). A generic term does not indicate the source of a service, but merely defines a type, genus or class of services, and is not entitled to any protection. *Id.*

RUI contends that WSI's service mark infringement claim fails because the term "woodroast" is generic.[6] WSI argues, however, that the term "woodroast" is strongly suggestive because it identifies the restaurant services provided as emanating from a particular source, Shelly's Woodroast. WSI further contends that the strong association between the mark and Shelly's Woodroast is evidenced by the local and national publicity that WSI has received concerning its restaurant and woodroast cooking style. WSI thus argues that the mark is entitled to broad protection. WSI further contends that summary judgment is inappropriate because its "woodroast" mark is incontestable and thus presumed valid.

▉ A certificate of registration for a service mark provides prima facie evidence of the validity of the mark, the registration of the mark, the registrant's ownership of the mark and the registrant's exclusive right to use the mark in commerce. 15 U.S.C. § 1057(b).[7] Moreover, a mark that

**6.** RUI further contends that the distinction between the term "woodroast" and the phrase "wood roasted" is immaterial for purposes of determining genericness.

**7.** Section 1053 of the Lanham Act provides that service marks may be registered in the same manner and provided with the same protection as trademarks. *Id.* § 1053.

**8.** That section specifically provides that:
no incontestable right shall be acquired in a mark which is the generic name of the goods or services or a portion thereof, for which it is registered.
*Id.* at § 1065(4).

**9.** The effect of incontestability is to confer a conclusive presumption of secondary meaning on a mark, because it is only secondary meaning that would ordinarily preserve a right to

meets certain requirements, primarily continuous use for five years after registration, becomes "incontestable". *Id.* § 1065. Incontestability provides conclusive evidence of the mark's validity, its registration, the registrant's ownership in the mark and the registrant's exclusive right to use the mark in commerce. *Id.* § 1115(b). Thus, it provides a method for a registrant to quiet title to the ownership of its mark. *Park 'N Fly v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 198–202, 105 S.Ct. 658, 663–66, 83 L.Ed.2d 582 (1985). An incontestable mark may also be used offensively to enjoin another's infringement. *Id.* at 205, 105 S.Ct. at 667.

▉ Incontestability, however, cannot be acquired if a mark is deemed generic. 15 U.S.C § 1065(4).[8] An infringing party can avoid liability by proving that the mark is generic. *Id.* § 1115(b)(4). Although genericness is a defense to incontestability, proof of mere descriptiveness will not defeat an incontestable mark.[9] Thus, a defendant contesting an alleged incontestable mark must prove actual genericness, proof of descriptiveness will not suffice. *Park 'N Fly*, 469 U.S. at 196, 105 S.Ct. at 662; *Beer Nuts*, 711 F.2d at 940 n. 7; *Union Carbide Corp.*, 531 F.2d at 381.[10]

▉ WSI contends that two of its marks, "Woodroast" and "The Original Shelly's Woodroast and Design", have

that descriptive mark. *See Frito–Lay, Inc. v. Bachman Co.*, 704 F.Supp. 432 at 435 (S.D.N.Y. 1989) (citing *Park 'N Fly v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985)).

**10.** The court notes, however, that the incontestability of a mark does not affect its strength. *General Mills*, 824 F.2d at 626. A descriptive trademark, even if it has become incontestable, may only be entitled to minimal protection. *See Miss World (UK) Ltd. v. Mrs. America Pageants*, 856 F.2d 1445, 1448–50 (9th Cir.1988) (although incontestable, "Miss World" service mark found to be relatively weak). Thus, although an incontestable mark is not subject to invalidity based solely on its descriptiveness, the mark may be found weak to the point of enabling the owner only to assert rights to the use of the exact mark. *American Cyanamid Co. v. S.C. Johnson, Inc.*, 729 F.Supp. 1018, 1024 (D.N.J.1989).

achieved "incontestable" status pursuant to § 1065, thus shifting to RUI the burden of proving that the phrase "woodroast" is generic. *See, e.g., WSM, Inc.,* 724 F.2d at 1326; *Convenient Food Mart, Inc. v. 6-Twelve Convenient Mart, Inc.,* 690 F.Supp. 1457, 1460, (D.Md.1988) (citing *Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1529 n. 4 (4th Cir.1984)) (for the proposition that defendants had burden of overcoming presumption of incontestability by proving by preponderance of evidence that plaintiff's marks were generic), *aff'd mem.,* 870 F.2d 654 (4th Cir.1989). The test for deciding whether a service mark has become generic "is one of buyer understanding." *Anheuser-Busch, Inc. v. Stroh Brewery Co.,* 750 F.2d 631, 638 (8th Cir.1984) (citing *WSM, Inc,* 724 F.2d at 1325). Moreover,

> [t]he standard to be applied in determining whether a term is generic is not whether it has *some* significance to the public as an indication of the nature or class of the article, but whether that is its *principal* significance.

*Frito–Lay, Inc. v. Bachman Co.,* 704 F.Supp. 432, 439 (S.D.N.Y.1989) (quoting *Stix Prods., Inc. v. United Merchants & Mfrs., Inc.,* 295 F.Supp. 479, 490 (S.D.N.Y. 1968) (emphasis in original)). In *Frito–Lay,* the court denied defendant's motion for summary judgment on the issue of genericness, noting that defendant "has offered no proof of widespread, as distinguished from fairly scattered, consumer use [of the mark] as a generic term." *Id.* at 440. In the present case, RUI contends that the phrase "wood roasted" is generic because various publications and restaurants have also used the phrase to describe food items cooked over a wood fire.[11] It fails, however, to present any evidence indicating either consumers' use or understanding of that phrase. Examining the record, the court concludes that there is a material fact dispute concerning whether the "woodroast" mark is suggestive, descriptive or generic. *Cf. Henri's Food*

*Prods. Co. v. Tasty Snacks, Inc.,* 817 F.2d 1303, 1306 (7th Cir.1987) (the term "tasty" is not generic but "merely descriptive" of a quality found in many salad dressings); *Frito–Lay,* 704 F.Supp. at 439–40 (denying defendant's motion to cancel trademark because "ruffles" was generic for ridged potato chips); *Schmidt v. Honeysweet Hams, Inc.,* 656 F.Supp. 92, 96 (N.D.Ga.1986) (although "honey baked ham" trademark was weak because it was merely descriptive, evidence of consumer confusion and similarity of marks supported preliminary injunction prohibiting defendant's use of phrase "honeysweet hams"); *Eagle Snacks, Inc. v. Nabisco Brands, Inc.,* 625 F.Supp. 571, 581 (D.N.J.1985) (finding that the marks "honey roast" and "honey roasted" are not generic); *Schmidt v. Quigg,* 609 F.Supp. 227, 229–30 (E.D.Mich.1985) ("honey baked ham" held not generic). The court thus denies defendant's motion for summary judgment based on the genericness of the phrase "woodroast".

■ RUI also moves for summary judgment on WSI's service mark infringement claim arguing that its use of the phrase "wood roasted" constitutes a fair use under the Lanham Act. The Act provides that the use of:

> a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin....

does not constitute infringement of a service mark owner's rights, even if the service mark is incontestable. 15 U.S.C. § 1115(b)(4). That defense, however, is not available if RUI's use of the phrase constitutes service mark use. *Tree Tavern Prods. v. ConAgra, Inc.,* 640 F.Supp. 1263, 1268 (D.Del.1986). Courts examine various factors to determine whether a party is using a term for service mark purposes, including:

> 1. Is the term used to attract public attention?

---

11. RUI identified twenty-four restaurants that serve food cooked over a wood fire. WSI contends, however, that only seven of those restaurants use the phrase "wood roasted" on their menus. Of those seven, WSI claims that five

use the phrase, printed in small letters, to describe an entree and only two restaurants use the phrase to actually identify a selection on the menu. Only RUI's Pantana has used the phrase "woodroast."

2. Is the term a prominent element of the package?

3. Is the phrase in a different type size or style?

4. Is the term set off?

5. Does a subordinate phrase actually describe the product being sold?

*Id.* at 1269 (citing *Beer Nuts,* 711 F.2d at 937–38).

RUI uses the phrase "wood roasted" as a heading on Palomino's menu with the Palomino service mark, a figure of a horse printed on top of the word "Palomino," superimposed on that section of the menu.[12] It argues that such use does not constitute service mark use because "wood roasted" merely describes various dishes listed below it and the heading is no larger or more prominent than various other headings on the menu, such as "pasta" or "desserts". RUI further contends that its use of the Palomino service mark clearly identifies the source of Palomino's food selections, further undercutting WSI's claim that the phrase "wood roasted" is being used to identify the source of Palomino's services. RUI finally contends that it uses the phrase in good faith to succinctly and accurately describe various selections, not to trade on any good will of Shelly's Woodroast.

Examining the factors relevant to the determination of use as a service mark, the court first notes that RUI's Pantana restaurant places the phrase "wood roasted chicken" at the top of a page of its menu, printed in large, stylized letters unlike those of any other menu text. Palomino similarly uses the phrase "wood roasted

seafood" as the heading for a section of its menu, printed, as are the other headings, all in capitals, using large type and bold print. Thus, the phrase "wood roasted" is a prominent feature of both menus and may be intended to attract consumers' attention rather than to merely describe food items. In addition, both menus use subordinate phrases to describe the various wood roasted dishes.[13] Although RUI's also uses its Palomino and Pantana service marks in conjunction with the phrase "wood roasted", such use does not necessarily preclude denial of its motion for summary judgment on the issue of fair use because all of those marks are prominent elements of the menus.[14] *See Frito–Lay,* 704 F.Supp. at 436 (noting that defendant's use of its own name did "not necessarily negate the possibility that [the mark at issue was] also being used in a trademark sense, especially since it appear[ed] ... as prominently as [defendant's own mark]"). Based on the foregoing, the court concludes that there is a material fact dispute concerning whether RUI's use of "wood roasted" in its Pantana and Palomino menus constitutes a fair use or service mark use. Accordingly, the court denies RUI's motion for summary judgment based on that defense.[15]

■ RUI finally contends that it is entitled to summary judgment on WSI's infringement claim because RUI's use of the phrase "wood roasted" presents no likelihood of consumer confusion. The key inquiry in any infringement action is whether the more recent mark so resembles the

---

**12.** The Palomino service mark is also superimposed on other sections of the menu.

**13.** A comparison of various other menus, including those used by other RUI restaurants, also indicates that most print the phrase "wood roasted" in small letters similar to those used for the rest of the text, and thus not set off in any manner.

**14.** Similarly, the use of a house mark will not foreclose a finding of the likelihood of consumer confusion, *see discussion infra,* but is rather one factor to consider because:

a purchaser could well think plaintiff had licensed defendant as a second user and the

addition is thus "an aggravation, and not a justification."

*A.T. Cross Co. v. Jonathan Bradley Pens, Inc.,* 470 F.2d 689, 692 (2d Cir.1972) (quoting *Menendez v. Holt,* 128 U.S. 514, 521, 9 S.Ct. 143, 144, 32 L.Ed. 526 (1888)).

**15.** The court further notes that WSI proffers undisputed evidence that various representatives of RUI, including its president Ray Lindstrom, were aware of WSI's marks. Such awareness may give rise to an inference of bad faith for purposes of establishing a fair use defense. *Frito-Lay,* 704 F.Supp. at 437 (citing *Centaur Communications v. A/S/M Communications,* 830 F.2d 1217, 1228 (2d Cir.1987)).

registered mark that its use is "likely to cause confusion, or to cause mistake or to deceive." 15 U.S.C. § 1114(1). The Eighth Circuit has set forth various factors relevant to an analysis of the likelihood of confusion, including:

1. The strength of the infringed mark;

2. The alleged infringer's intent to pass off its services as those of another;

3. Whether the type of service involved, and its costs and conditions of purchase, tend to provide consumers with an opportunity to eliminate any confusion that would otherwise exist;

4. Whether the marks, examined as a whole, are similar;

5. The degree to which the services or products compete with one another; and

6. Evidence of actual confusion.

See, e.g., SquirtCo. v. Seven–Up Co., 628 F.2d 1086, 1091 (8th Cir.1980).

Examining the first factor, the relative strength of the mark "woodroast", the court has previously determined that a material fact dispute exists concerning whether the "woodroast" mark is suggestive, descriptive or generic. Thus, at the present time the strength of WSI's mark is unclear.

Turning to the second factor, an alleged infringer's intent to pass off its services as those of another may raise an inference of likelihood of confusion. Id. Moreover, if an alleged infringer chooses a similar mark armed with knowledge of the prior mark, such knowledge may raise an inference of an intent to trade upon a plaintiff's good will. Aveda, 706 F.Supp. at 1429 (citing Fleischmann Distilling Corp. v. Maier Brewing Co., 314 F.2d 149 (9th Cir.), cert. denied, 374 U.S. 830, 83 S.Ct. 1870, 10 L.Ed.2d 1053 (1963)). In the present case, it is undisputed that RUI had actual knowledge of WSI's "woodroast" mark before it opened Palomino. Despite that knowledge, RUI chose to use the phrase "wood roasted". The court thus concludes that RUI's conduct raises an inference that its mark is confusingly similar to WSI's "woodroast" mark. See, e.g., Beer Nuts, 711 F.2d at 941.

The cost and type of service involved is also relevant to the likelihood of confusion. SquirtCo., 628 F.2d at 1091. Confusion is more likely to occur in situations where the services or goods are relatively inexpensive because consumers typically exercise less care when making such choices than when choosing more expensive goods or services. Beer Nuts, 711 F.2d at 941. The court concludes that the type of service and conditions of purchase are relevant in the present case because costs are relatively inexpensive and restaurant patrons are typically given only a few minutes to examine a menu. In that short period of time, consumers may be more likely to confuse the phrase "wood roasted" with WSI's "woodroast" mark.

The similarity of the marks is determined by examining of "the marks as a whole, including visual impression and sound." Id. (citing David Sherman Corp. v. Heublein, Inc., 340 F.2d 377, 380 (8th Cir.1965)). The evaluation is to be made by assessing "what occurs in the marketplace, not in the courtroom." Beer Nuts, 711 F.2d at 941 (quoting James Burrough Ltd. v. Sign of Beefeater, Inc., 540 F.2d 266, 275 (7th Cir.1976)). When the parties provide services in direct competition, the degree of similarity required to prove the likelihood of confusion will be less than in cases involving no direct competition. Id. Examining the marks at issue in the present case, the court notes that RUI has taken the mark "woodroast" and merely added a space between the two words and the suffix "ed". The court further notes that the parties are in direct competition, operating restaurants within a few miles of each other in the Twin City area. Accordingly, the court concludes that there is a material fact dispute concerning the degree of similarity between the marks.

Finally, WSI proffers evidence of actual consumer confusion as a result of RUI's use of the phrase "wood roasted" and such evidence provides positive proof that a likelihood of confusion may exist. SquirtCo., 628 F.2d at 1091 (citing Standard Oil Co. v. Standard Oil Co., 252 F.2d 65, 74 (10th Cir.1958)).

Based on the foregoing, the court concludes that WSI raises various material fact disputes concerning the likelihood of confusion between the two marks, and thus denies RUI's motion for summary judgment on that issue. *See Aveda Corp.*, 706 F.Supp. at 1419 (likelihood of confusion present for marks "Aveda" and "Avita" for hair care products); *American Bakeries Co. v. Pan–O–Gold Baking Co.*, 1986 WL 15069 at *3, 1 U.S.P.Q.2d (BNA) 1331 (D.Minn.1986) (likelihood of confusion found between marks "D'Italia" and "D'Italiano" for baked goods).

In summary, the court concludes that there are material fact disputes concerning the issues of whether the "woodroast" mark is generic, whether RUI may properly assert a fair use defense, and whether RUI's use of the phrase "wood roasted" creates a likelihood of confusion between its food products and WSI's "woodroast" mark. Accordingly, the court denies RUI's motion for summary judgment on WSI's service mark infringement claim under 15 U.S.C. §§ 1051–1127.

### B. WSI's False Designation of Origin Claim

RUI also moves for summary judgment on WSI's false designation of origin claim pursuant to 15 U.S.C. § 1125(a).[16] To prevail on such a claim, a plaintiff must demonstrate:

1. that it is the prior owner of a service mark;

2. that defendant has adopted either the same or a confusingly similar mark; and

3. that defendant's use creates a likelihood of confusion concerning the proper origin of goods or services such that a

consumer is likely to think that defendant's services are being sold with plaintiff's consent or authorization or that defendant is affiliated with or connected to plaintiff.

*See, e.g., American United Life Ins. Co. v. American United Ins. Co.*, 731 F.Supp. 480, 485 (S.D.Fla.1990) (citing statute and *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1512 (11th Cir.1984)). A defendant's generic or fair use of a service mark, however, provides a statutory defense to such claims. *Western Publishing Co., Inc. v. Rose Art Indus.*, 733 F.Supp. 698, 700–01 (S.D.N.Y.) (citing *Soweco*, 617 F.2d at 1189 & n. 30, for proposition that fair use defense applies to claims of false designation of origin under § 1125(a)), *aff'd*, 910 F.2d 57 (2d Cir.1990). RUI contends that its use of the phrase "wood roasted" does not constitute a false designation of origin likely to cause consumer confusion because it uses the phrase merely to describe a method of food preparation, not to establish the identity or source of its food. RUI thus contends that WSI's claim fails because RUI's use constitutes either a generic or fair use of the term. As previously determined, however, WSI raises material fact disputes concerning the genericness of the "woodroast" mark, whether RUI's use of the phrase "wood roasted" creates a likelihood of consumer confusion, and whether RUI is entitled to assert a fair use defense. Accordingly, the court denies RUI's motion for summary judgment on WSI's claim of false designation of origin.

### C. WSI's State Law Claim

RUI also moves for summary judgment on WSI's deceptive trade practices claim pursuant to the Uniform Deceptive

---

**16.** That section specifically provides that:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, spon-

sorship, or approval of his or her goods, services, or commercial activities by another person, or

(2) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

Trade Practices Act, Minn.Stat. §§ 325D.43–48. Section 325D.44 of that Act provides that:

Subdivision 1: A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person:

(1) passes off goods or services as those of another;

(2) causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services;

(3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by another;

. . . .

(13) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

Thus, the Uniform Deceptive Trade Practices Act covers both service mark infringement and false advertising. Plaintiffs typically assert claims under that Act in conjunction with federal trademark infringement claims; in that context, the Minnesota Deceptive Trade Practices Act mirrors the Lanham Act. *See Scott v. Mego Int'l Inc.*, 519 F.Supp. 1118, 1137 (D.Minn.1981) (such claims are "substantially the same as the federal claims"); *cf. Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 526–27 (10th Cir.1987) (by proving trademark infringement under the Lanham Act, plaintiff had also shown violation of Oklahoma Deceptive Trade Practices Act). WSI contends that RUI's use of the phrase "wood roasted" violates the Minnesota statute. RUI argues, however, that WSI's state law claim fails for the same reasons that its federal claims fail. As previously determined, however, RUI is not entitled to summary judgment on WSI's federal claims. Accordingly, the court denies RUI's motion for summary judgment on WSI's state law claim.

**2. Plaintiff's Motion For A Preliminary Injunction**

WSI seeks a preliminary injunction, pursuant to 15 U.S.C. § 1114 and Rule 65 of the Federal Rules of Civil Procedure, to prohibit RUI's alleged infringement of the "woodroast" mark during the pendency of the present action. WSI contends that it has developed extensive good will in, and recognition of, its mark, and that RUI seeks to appropriate that good will and recognition by using the term "wood roasted" on its menus. WSI argues that RUI has no need to use that term because many non-infringing alternatives are available. WSI further asserts that if the court allows the alleged infringement to continue, WSI's existence is threatened, but if the court grants the requested relief, RUI would only be required to reprint its menus.

The Lanham Act provides that:

The [federal] courts ... shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under section 1125(a) of this title.

15 U.S.C. § 1116(a). The grant of such relief is within the district court's discretion, examining the same factors used for other types of claims. *Calvin Klein Cosmetics v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 667 (8th Cir.1987). The Eighth Circuit has set forth the following factors to evaluate:

1. The likelihood that the movant will succeed on merits;

2. The threat of irreparable harm to the movant;

3. The balance between the harm to the movant if injunctive relief is denied and the injury that will result if the injunction is granted; and

4. The public interest.

*Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir.1981) (en banc). The court will examine each factor in turn.

**A. The Likelihood of Success on the Merits**

To prevail on the merits of its claim, a plaintiff in a service mark action must prove: (1) ownership of a valid ser-

vice mark; and (2) the likelihood of confusion between the infringing and registered marks. *Aveda Corp.*, 706 F.Supp. at 1426 (citing *A.J. Canfield Co. v. Vess Beverages, Inc.*, 796 F.2d 903, 906 (7th Cir.1986)). Although a certificate of registration provides prima facie evidence of a service mark's validity, the court has determined that a material fact dispute exists concerning the proper characterization of the term "woodroast" as suggestive, descriptive or generic. The court thus concludes that the validity of WSI's mark is unclear. The court has further determined that there is a material fact dispute concerning the likelihood of confusion between the two marks. The court thus determines that this factor favors neither party.

### B. The Threat of Irreparable Harm

In an action for service mark infringement, a plaintiff is able to make the requisite showing of irreparable harm by demonstrating a likelihood of confusion. *Calvin Klein Cosmetics v. Lenox Laboratories*, 815 F.2d 500, 505 (8th Cir.1987) (citing *Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc.*, 633 F.2d 746, 753 (8th Cir. 1980)); *Aveda*, 706 F.Supp. at 1431. In evaluating the threat of irreparable harm, the court may also consider the potential loss of control over the quality of a plaintiff's services, and the risk of damage to a plaintiff's reputation and service mark from the continued use of an infringing mark. *A.J. Canfield Co.*, 796 F.2d at 908–09.

If injunctive relief is denied, WSI contends that it will be irreparably harmed because:

1. It will lose control over the reputation and good will of its services;
2. Its reputation for quality may be damaged by the potentially inferior quality of RUI's services; and
3. Its substantial investment of time and money may be threatened or lost if RUI provides inferior service using a confusingly similar mark.

WSI further contends that RUI's continued use of the phrase "wood roasted" may harm consumers who purchase RUI's possi-bly inferior services incorrectly believing that such services were provided or authorized by WSI.

Although the court has determined that there is a material fact dispute regarding the likelihood of confusion, the court notes that WSI has proffered evidence of actual consumer confusion. The court further notes that WSI has received widespread publicity and made a substantial investment of time and money developing and registering its "woodroast" mark; RUI's continued use of the phrase "wood roasted" during the pendency of this litigation may destroy any secondary value of the "woodroast" mark, thus resulting in a loss of WSI's goodwill. *Tree Tavern Prods.*, 640 F.Supp. at 1272–73 (plaintiff's loss of goodwill constitutes irreparable harm and "does not require a showing of confusion as to the origin of goods, or of injury to plaintiff's reputation caused by inferior goods"; plaintiff suffers irreparable harm even if defendant's goods are comparable in quality). Based on the foregoing, the court determines that WSI has demonstrated a threat of irreparable harm sufficient to justify preliminary injunctive relief.

### C. The Balance of Hardships

In addition to evaluating the threat of irreparable harm, the court must also determine whether the harm to the movant if preliminary injunctive relief is denied outweighs the harm to the nonmovant if such relief is granted. *Aveda*, 706 F.Supp. at 1431. RUI contends that the balance of hardships favors the denial of injunctive relief, arguing that wood roasted foods are an essential component of all of its new restaurants. RUI already operates three restaurants that serve such food items and plans to open three more restaurants in the near future. RUI contends that it is crucial that it is able to use the phrase "wood roasted" to accurately and succinctly describe its method of food preparation and that no other terms will suffice. It thus argues that an order prohibiting its use of the phrase "wood roasted" would substantially reduce its volume, potentially costing RUI as much as $1,000,000 in lost profits

per year. RUI further contends that it faces substantial damages based on lost opportunities for future expansion.

In cases where a movant has made a substantial investment in developing its service mark as compared to the non-moving party's investment in the allegedly infringing mark, courts generally find that the moving party's hardship outweighs that of the non-moving party. *Id.* (citing *McNeil Laboratories, Inc. v. American Home Prods. Corp.*, 416 F.Supp. 804 (D.N.J.1976) & *Humble Oil & Refining Co. v. Humble Leasing C.*, 146 U.S.P.Q. (BNA) 717, 721 (E.D.Pa.1965)). As previously noted, WSI has made a substantial investment of time and money to develop and register its "woodroast" mark. In contrast, RUI began to use the phrase "wood roasted" recently and did not enter the present market until October 1991. The court notes that other, non-infringing alternatives are available for RUI's use; Palomino's menu already uses some of those phrases, including "spit-roasted", "oak fired" and "wood oven roasted". The court further notes that Palomino prints its own menus and it would cost RUI little to reprint those menus during the pendency of this litigation. Based on the foregoing, the court concludes that the balance of hardships tips in favor of preliminary injunctive relief.

D. Public Interest

The final factor in considering whether injunctive relief should issue is the public interest. In the context of trademark infringement, that factor involves balancing the interest of protecting the public from confusion or deception with the interest of facilitating a competitive market. *Aveda,* 706 F.Supp. at 1431–32. WSI has exclusively used the "woodroast" mark for a period of years, and contends that the public has come to recognize WSI as the source of all restaurant services bearing that mark or any confusingly similar mark. WSI thus contends that prohibiting RUI's use of the phrase "wood roasted" will serve the public interest by preventing consumer confusion.

The Eighth Circuit, however, has recognized that there is a public interest in permitting others to call a service by its generic title. *WSM, Inc.,* 724 F.2d at 1327. RUI thus argues that permitting its continued use of the phrase "wood roasted" serves that public policy. Examining the conflicting policies, the court concludes that this factor favors neither party.

Based on WSI's showing of the threat of irreparable harm and the court's determination that the balance of hardships favors preliminary injunctive relief, the court grants WSI's motion for a preliminary injunction.

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendant RUI's motion for summary judgment is denied;

2. Plaintiff WSI's motion for preliminary injunction is granted, and Restaurants Unlimited, Inc., its agents, servants, employees, attorneys and all persons in active concert and participation with them, are enjoined, pending the final determination of this action, from:

a. Using the marks "Woodroast", "The Original Shelly's Woodroast and Design" or "Original Woodroast Cooking and Design" in any form or any manner that is related to the preparation of any food item cooked over wood;

b. Using the phrase "wood roasted" in any menu, advertisement or offering for sale in relation to the preparation of any food item cooked over wood;

c. Causing, directly or indirectly, any other person to use the marks "Woodroast", "The Original Shelly's Woodroast and Design" or "Original Woodroast Cooking and Design" in any form or any manner that is related to the preparation of any food item cooked over wood;

d. Causing, directly or indirectly, any other person to use the phrase "wood roasted" in any menu, advertisement or offering for sale in relation to the preparation of any food item cooked over wood;

3. This order shall be effective upon plaintiff's giving a $10,000 bond, pursuant

to Federal Rule of Civil Procedure 65(c), for the payment of such costs and damages as may be incurred by the defendant should it be determined that the defendant has been wrongfully enjoined; and

4. Within thirty days after plaintiff gives such bond, defendant shall file with the court a written description of the steps it has taken to comply with this order.