1997 ND 21

**KAT VIDEO PRODUCTIONS, INC., and Todd Muggerud, Plaintiffs and Appellants,**

**v.**

**KKCT–FM RADIO a/k/a Kat Country, Defendant and Appellee.**

**Civil No. 960184.**

Supreme Court of North Dakota.

Feb. 12, 1997.

204

Daniel L. Hovland and Scott K. Porsborg (argued), of Smith Bakke Hovland & Oppegard, Bismarck, for plaintiffs and appellants.

Orell D. Schmitz and Robert R. (Rick) Maixner (argued), of Schmitz, Moench & Schmidt, Bismarck, for defendant and appellee.

NEUMANN, Justice.

[¶ 1] KAT Productions appeals the district court's judgment dismissing its complaint seeking to enjoin KKCT–FM Radio, a/k/a Kat Country, from using the name "Kat" and a tiger logo, in violation of North Dakota's tradename and trademark laws. KAT Productions argues the court erred by dismissing the case on summary judgment, asserting the test for infringement, whether there is a "likelihood of confusion," is a question of fact. Alternatively, KAT Productions argues, if this court decides summary judgment was appropriate, the district court erred by not finding a likelihood of confusion exists as a matter of law. We reverse and remand with instructions.

[¶ 2] In 1989, Todd Muggerud founded KAT Productions, a business providing audio and video production services for commercial, educational, and training purposes. Muggerud conceived the name "KAT," and a lion's head logo, intending them to be unique and distinct from other competitors. In 1993, Kat Country, a country music radio station and audio production company, was founded. Kat Country initiated an advertising campaign using the name "Kat" and a tiger's head logo. In November and December 1993, after learning of Kat Country's advertising campaign, KAT Productions registered its logo and name according to North Dako-

ta's trademark and tradename laws, N.D.C.C. chapters 47–22 and 47–25.[1] Since 1993, both companies have maintained their names and logos.[2]

[¶ 3] In September 1994, KAT Productions initiated proceedings against Kat Country for trademark and tradename infringement. In July 1995, KAT Productions moved for a temporary injunction, seeking to enjoin Kat Country from using the "Kat" name and feline logo. In an affidavit before the district court, Muggerud submitted the names of various businesses and individuals who had confused the two companies or mistaken their affiliation. For example, Muggerud told of a woman caller who complained to KAT Productions about an O.J. Simpson joke broadcast on Kat Country. According to KAT Productions, many of its clients are state agencies, local social service agencies, and tribal authorities who are culturally sensitive to social issues such as child abuse, drug and alcohol abuse, and sexual abuse. KAT Productions claimed Kat Country is less sensitive to social issues,[3] and potential clients might avoid KAT Productions if they perceived an affiliation with Kat Country.

[¶ 4] A hearing was held on the motion for a temporary injunction on October 16, 1995. After the hearing, the court requested the parties amend the motion so the matter could be considered as a motion for

1. The registered trademark consists of a lion's head with the words "KAT Video Productions."

2.

The registered tradename was "KAT Productions."

3. Illustrating Kat Country's lack of sensitivity to certain social issues, KAT Productions submitted a Kat Country advertisement as an exhibit. The advertisement was a small paper bag advertising the Kat Country name and logo with Lite beer on one side, and the words "Lay Me Down, We'll Do It Again" on the other side.

summary judgment. The parties agreed. On April 16, 1996, the court entered its memorandum opinion. The district court applied a six-step test used by the Eighth Circuit Court to determine whether a likelihood of confusion exists between the parties' trademarks and tradenames. *Anheuser–Busch, Inc. v. Balducci Publications*, 28 F.3d 769, 774 (8th Cir.1994). According to the Eighth Circuit test, a court must examine: (1) the strength of the trademark or tradename; (2) the similarities between the marks; (3) the competitive proximity of the products; (4) the alleged infringer's intent to confuse the public; (5) evidence of actual confusion; and, (6) the degree of care reasonably expected of plaintiff's potential customers. The district court found "KAT" is an arbitrary trademark and is afforded the greatest amount of protection under North Dakota law. However, the court determined KAT Productions had not established an infringement on their tradename or trademark because the feline trademarks were distinguishable, the services rendered by each company were not in direct competition, there was no basis to suggest a confusion of consumers, and Kat Country did not choose the name "KAT" or the tiger trademark to pass off their services as related to KAT Productions. The district court ordered summary judgment in favor of Kat Country. KAT Productions appeals, arguing the district court erred in concluding Kat Country is not in violation of North Dakota's trademark and tradename laws.

[¶ 5] "In reviewing a summary judgment, we view the evidence in the light most favorable to the party opposing the summary judgment motion, and we allow that party all favorable inferences." *Delzer v. United Bank of Bismarck*, 484 N.W.2d 502, 508 (N.D.1992). "[T]he court may examine the pleadings, depositions, admissions, affidavits, interrogatories, and inferences to be drawn from the evidence to determine whether summary judgment is appropriate." *Kukowski v. Simonson Farm, Inc.*, 507 N.W.2d 68,

71 (N.D.1993). "Summary judgment is inappropriate if neither party is entitled to judgment as a matter of law or if reasonable differences of opinion exist as to the inferences to be drawn from the undisputed facts." *Larson v. Baer*, 418 N.W.2d 282, 286 (N.D.1988) (citing *Garcia v. Overvold Motors, Inc.*, 351 N.W.2d 110 (N.D.1984)).

[¶ 6] In North Dakota, trademark and tradename protection is treated in N.D.C.C. chapters 47–22 and 47–25, respectively. Under N.D.C.C. § 47–22–11(1), any person who decides to "[u]se, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of a trademark registered under this chapter ... shall be liable to a civil action by the owner of such registered trademark." Under N.D.C.C. § 47–25–01 "any person who has registered a trade name hereunder may institute a civil suit prohibiting any other person from using such name." These chapters provide for registration of trademarks and tradenames in North Dakota.[4] They do not, however, provide the underlying substantive law protecting infringement. The substantive law protecting trademark and tradename infringement stems from common law, which provides the framework for the disposition of this case.

[¶ 7] The general purpose of the law of trademarks and tradenames is "to prevent one person from passing off his goods or his business as the goods or business of another." *American Foundries v. Robertson*, 269 U.S. 372, 380, 46 S.Ct. 160, 162, 70 L.Ed. 317 (1926). A trademark is a distinctive mark, symbol, or designation used by a producer or manufacturer to identify and distinguish his services or goods from the services or goods of others. *Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 939 (10th Cir.1983); N.D.C.C. § 47–22–01(1).[5] A tradename is a distinctive word,

4. Although not applicable to this appeal, we note N.D.C.C. chs. 47–22 and 47–25 were amended during the 1995 Legislative Assembly.

5. North Dakota's trademark law does not specifically allow service trademarks to be registered. Therefore, even though KAT Productions registered its trademark, Kat Country argues the reg-

istration was improper and should not be upheld. However, although the trademark chapter may not provide a statutory avenue to register service trademarks, N.D.C.C. § 47–22–13 specifically states "nothing herein shall adversely affect the rights or the enforcement of rights in trademarks acquired in good faith at any time at common

name, symbol, or other designation that identifies and distinguishes a business from the businesses of others. *American Foundries,* 269 U.S. at 380, 46 S.Ct. at 162; N.D.C.C. § 47–25–01. Generally, trademarks identify goods and services and tradenames identify businesses, but the standard of infringement is the same. *Id.* at 380, 46 S.Ct. at 162.

[¶ 8] Ownership rights in a trademark or tradename accrue when the mark or term is used or displayed in the marketplace. *Blue Bell, Inc. v. Farah Manufacturing Company, Inc.,* 508 F.2d 1260, 1265 (5th Cir.1975). One who first uses a designation as a trademark or tradename has priority in the use of that designation over others in any geographic area in which the actor has used the designation in good faith. *Hanover Milling Co. v. Metcalf,* 240 U.S. 403, 415, 36 S.Ct. 357, 361, 60 L.Ed. 713 (1916); *Sweetarts v. Sunline, Inc.,* 436 F.2d 705, 708 (8th Cir. 1971). To prevail on a claim for trademark or tradename infringement, a party must show "a likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Mobil Oil Corp. v. Pegasus Petroleum Corp.,* 818 F.2d 254, 256 (2d Cir.1987) (referring to federal infringement law under the Lanham Act).

[¶ 9] This is a case of first impression in North Dakota. *Compare Standard Oil Co. v. Standard Oil Co. of North Dakota,* 123 F.Supp. 227 (U.S.D.C.N.D.1954) (reviewing a claim for trademark and tradename infringement under the laws of North Dakota.) Although we have not addressed the issue, there is a wealth of case law discussing the "likelihood of confusion" standard. Ordinarily those cases examine six to eight factors in determining whether a likelihood of confusion exists. *See, e.g., Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2d Cir. 1961); *Armstrong Cork Co. v. World Carpets, Inc.,* 597 F.2d 496, 501 (5th Cir.1979), *cert. denied* 444 U.S. 932, 100 S.Ct. 277, 62

L.Ed.2d 190 (1979) (applying various elements); *Carson v. Here's Johnny Portable Toilets, Inc.,* 698 F.2d 831, 833 (6th Cir.1983) (suggesting eight factors); *Helene Curtis Indust., Inc. v. Church & Dwight Co., Inc.,* 560 F.2d 1325, 1330 (7th Cir.1977), *cert. denied,* 434 U.S. 1070, 98 S.Ct. 1252, 55 L.Ed.2d 772 (1978) (adopting seven factors and cited with approval in *McGraw–Edison Co. v. Walt Disney Productions,* 787 F.2d 1163, 1167–68 (7th Cir.1986)); *Anheuser–Busch,* 28 F.3d at 774 (adopting six factors); *Toho Co., Ltd. v. Sears, Roebuck & Co.,* 645 F.2d 788, 790 (9th Cir.1981) (suggesting eight factors); *Beer Nuts,* 711 F.2d at 940 (following the RESTATEMENT OF TORTS § 729 (1938) and adopting four factors); RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 21 (1995) (suggesting six factors).

[¶ 10] Each of these various tests appears to be merely a moderately different way of articulating the same principles. The district court applied the Eighth Circuit Court of Appeal's six-step analysis articulated in *Anheuser–Busch.* Because the Eighth Circuit controls federal law in our state, we think that adopting it is appropriate. The factors we apply here are not exhaustive, as other jurisdictions have included additional factors that may be appropriate in future cases. For example, the Sixth Circuit, Ninth Circuit, and RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 21(e) (1995) include in their analysis the "likelihood of expansion of the product lines." Nonetheless, here, we are guided by the six-step test supported by the Eighth Circuit in *Anheuser–Busch.*

[¶ 11] KAT Productions contends the district court should not have dismissed the case on summary judgment because whether there is a "likelihood of confusion" is a question of fact which should be decided by the fact-finder. The "likelihood of confusion" test is generally considered a question of fact. *Universal City Studios, Inc. v. Nintendo, Co. Ltd.,* 746 F.2d 112, 116 (2d Cir.1984); *Armstrong Cork Co.,* 597 F.2d at 501; *Nike, Inc. v. Just Did It Enterprises,* 6 F.3d 1225, 1233 (7th Cir.1993); *SquirtCo v. Seven-Up Co.,* 628 F.2d 1086, 1091 (8th Cir.1980); *see* RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 21 cmt. m. (1995). Still, a court re-

law." Accordingly, even if KAT Productions could not register its service trademark under state law, common law provides protection for service trademarks, and KAT Productions' infringement claim is valid.

tains the important authority of monitoring the outer limits of similarity within which a jury is permitted to make a factual determination, and summary judgment is appropriate if the court is satisfied that the designations are so dissimilar that no question of fact is presented. *Universal City Studios,* 746 F.2d at 116. "If different factual inferences may be drawn, they must be drawn in favor of the party opposing summary judgment." *Larson,* 418 N.W.2d at 286. We, therefore, examine each factor independently to determine if the district court appropriately granted summary judgment.

**(1) The Strength of the Trademark or Tradename.**

[¶ 12] "The strength or distinctiveness of a mark [or name] determines both the ease with which it may be established as a valid trademark [or tradename] and the degree of protection it will be accorded." *Beer Nuts,* 711 F.2d at 939 (quoting *McGregor–Doniger, Inc. v. Drizzle, Inc.,* 599 F.2d 1126, 1131 (2d Cir.1979)). The strength is measured by the tendency of a purchaser to identify the goods sold under the designation as emanating from a particular source. *Jordache Enterprises, Inc. v. Levi Strauss,* 841 F.Supp. 506, 515 (S.D.N.Y.1993). Strength depends upon the distinctive quality of the mark in the eyes of the purchasing public. *Id.* "The use of terms or marks falls into four broad categories for purposes of legal recognition: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful." *Beer Nuts,* 711 F.2d at 939. An arbitrary or fanciful designation is considered the strongest and is afforded the greatest protection because it is identified solely with a particular product or service. *Jordache Enterprises,* 841 F.Supp. at 515. An arbitrary or fanciful designation "consist[s] of words that neither suggest nor describe any characteristic of the particular good or service with which it is used." *Id.* A suggestive designation indicates something about the product, but does not describe the product. *Woodroast Systems v. Restaurants Unlimited,* 793 F.Supp. 906, 911 (D.Minn.1992). Because a suggestive designation requires some degree of thought or imagination to determine the nature of the goods, it is also pro-

tected under the law. *Id.* Finally, a descriptive designation describing the nature, quality or other characteristics of the goods, or a generic designation denominating the general category or type of goods, are very weak marks and are afforded the least protection. *Id.* at 911–12.

[¶ 13] KAT Productions argues because its use of the word "KAT" and the feline logo was wholly unique in the geographic area and arbitrary to the business, its tradename and trademark are entitled to the maximum protection allowed. Kat Country, however, argues the trademarks and tradenames are descriptive because, when examining the tradename "KAT Productions," or the trademark in its entirety, the lion with the words "KAT Video Productions," they provide an indication of what the product is about. Furthermore, Kat Country argues the court should consider third-party use of the name or mark in determining the strength of the mark. Because the word "KAT" is a common business name in the nation, Kat Country argues its strength is weak. *Sun Banks of Florida, Inc. v. Sun Fed. Sav. and Loan Ass'n,* 651 F.2d 311, 316 (5th Cir.1981). The district court found the name and logo was an "arbitrary" mark because "KAT" is nondescriptive of the product and unique to the geographic area. We agree.

[¶ 14] On the evidence submitted to the trial court for summary judgment, the KAT Productions' tradename and trademark are arbitrary or fanciful marks. The word "KAT" does not describe the product in any manner. Although the name "KAT Productions" or "KAT Video Productions" provides insight into the business, tradenames and trademarks can consist of a combination of protected and unprotected elements. *Cf. Dranoff–Perlstein Assoc. v. Sklar,* 967 F.2d 852, 861 (3rd Cir.1992) (noting the comparison between two trademarks is not based on the use of a generic or descriptive term, but on the non-descriptive or non-generic portion of each mark). It is only the word "KAT," accompanied with the lion's head logo, that is protected here. The words "production" or "video productions" are generic words many businesses use and are not the part of the

designations protected under the law. Furthermore, although third-party use may be relevant in determining the strength of the mark, Kat Country did not submit any evidence indicating any other company in the area uses the name "KAT." Therefore, on the evidence submitted, KAT Productions' tradename and trademark are arbitrary or fanciful designations and are entitled to the greatest protection under the law.

(2) The Similarities in the Marks.

[¶ 15] Similarities in the marks is the second relevant factor in determining a likelihood of confusion. KAT Productions argues Kat Country's use of the word "KAT" and the feline logo makes the marks extremely similar. Although KAT Productions notes Kat Country uses small letters and the head of a tiger rather than a lion, it argues the difference is inconsequential, and the similarity is significant enough for people to believe the two companies are associated. Kat Country argues the marks are distinguishable not only by the lettering and different feline heads, but KAT Productions has the word "Productions" and "Video Productions" on their tradename and trademark, and Kat Country has the word "Country." The district court was persuaded by Kat Country's argument, and found the names and logos were not significantly similar. We disagree.

[¶ 16] When we compare the marks, we note both KAT Productions and Kat Country spell the word "KAT" with a "K" and both use feline heads on their logos. Although the feline heads differ slightly, we must assess these marks in light of the marketplace perception. *Calvin Klein Cosmetics Corp. v. Lenox Laboratories,* 815 F.2d 500, 504 (8th Cir.1987). We are not convinced a reasonable consumer would distinguish the marks without a side-by-side comparison. *See Beer Nuts,* 711 F.2d at 941 (noting the marks must be compared in light of what occurs in the marketplace, where a person depends only on memory of the mark and not an exact sample). Furthermore, even if prospective purchasers recognize the two designations are distinct, confusion may result if purchasers are likely to assume that the

similarities in the designations indicate a connection between the two users. *McGregor–Doniger, Inc.,* 599 F.2d at 1134. Because different factual inferences may be drawn concerning the similarities in the marks, we believe this issue is inappropriate for summary judgment and should be resolved by a fact-finder.

(3) The Competitive Proximity of the Products.

[¶ 17] Also relevant to the likelihood of confusion, is the competitive proximity of the products. When similar designations are used for similar products, the likelihood of confusion increases. *Mutual of Omaha Ins. Co. v. Novak,* 836 F.2d 397, 399 (8th Cir.1987) *cert. denied,* 488 U.S. 933, 109 S.Ct. 326, 102 L.Ed.2d 344 (1988). A company does not have to be in direct competition with another company to claim an infringement. Even if there is little or no direct competition between the products, infringement can still be found because the touchstone of trademark infringement is confusion, not competition. *Id.; see also Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.,* 549 F.2d 368, 388 (5th Cir. 1977) (rejecting the argument that infringement occurs only when the alleged infringer uses the mark on the same category of product). The test is whether the services are sufficiently related that prospective purchasers are likely to perceive an association. *Int'l Kennel Club v. Mighty Star, Inc.,* 846 F.2d 1079, 1089 (7th Cir.1988).

[¶ 18] KAT Productions argues the companies' products are sufficiently related. Although KAT Productions mainly produces videos for marketing and education, it also engages in audio productions for producing television commercials and audiotapes. KAT Productions also argues the two companies are part of the same communications industry and the similar designations combined with the overlap in services create a perception of affiliation. KAT Country argues the two companies are in completely different businesses, which decreases the likelihood of confusion. Kat Country is a radio broadcasting company and does not provide video pro-

duction services. Although KAT Productions may do a small amount of audio work, they are mostly a video production company. The district court agreed with Kat Country and found little similarity between the parties' products and services.

[¶ 19] We do not dispute the district court's conclusion that the companies largely produce different products and are not in direct competition with each other. However, the proximity of the companies' products may be strong enough to create confusion, even though they are not in direct competition. For example, a perception of affiliation is possible when two companies producing different products, such as a makeup company and a perfume company, share similar designations. On the other hand, if a makeup company and a farm machinery company shared similar designations, there would likely not be a perception of affiliation. Here, the two companies are members of the same communications industry and share some services. Whether this proximity in the products creates a perception of affiliation is an issue for the fact-finder.

(4) The Alleged Infringer's Intent to Confuse the Public.

[¶ 20] If Kat Country had intended to pass off its product as one of KAT Productions', this factor would weigh heavily in finding a likelihood of confusion. However, the evidence does not suggest an intent to confuse consumers in the marketplace. Each party claimed it selected the use of the word "KAT" and the feline logo without knowledge of the other company's use of the word or logo. Neither party has charged the other party with bad faith. It is therefore undisputed that Kat Country did not intend to confuse the public. However, the fact Kat Country did not adopt the name in bad faith or with the intent to pass off its product as the product of KAT Productions does not decrease the likelihood of confusion. Intent to deceive or confuse is not required for the imposition of liability. *Mutual of Omaha,* 836 F.2d at 400. The likelihood of confusion focuses on the consequences of a defendant's conduct, not on a defendant's motives. Although intent to pass off its goods may,

without more, prove infringement, lack of intent does not preclude liability. *Fuji Photo Film v. Shinohara Shoji Kabushiki Kaisha,* 754 F.2d 591, 596–97 (5th Cir.1985).

(5) Evidence of Actual Confusion.

[¶ 21] Evidence of actual confusion is an important element in determining if there is a likelihood of confusion. The test for actual confusion examines "whether any consumers have actually been confused by the products bearing the allegedly confusing marks." *Jordache Enterprises,* 841 F.Supp. at 518. Actual confusion can be established through anecdotal evidence of confused consumers in the marketplace, a consumer survey, or evidence of conduct probative of confusion such as misdirected letters and telephone calls. *Id.; see also Int'l Kennel Club,* 846 F.2d at 1090.

[¶ 22] Todd Muggerud, through his testimony and affidavit, submitted a list of examples demonstrating consumers who had confused the two businesses. His testimony included: (1) business associates questioning his affiliation with the radio station; (2) individuals phoning KAT Productions inquiring about advertising rates on KAT Country radio; (3) a young boy questioning whether KAT Productions was with the radio station while they were filming a video in a playground; (4) a secretary at a government office mistaking Muggerud to be representing Kat Country rather than KAT Productions; and (5) an individual calling KAT Productions to complain about an O.J. Simpson joke broadcast on Kat Country. Kat Country did not provide any evidence countering this, but instead argued those examples do not establish confusion in the marketplace. The district court found the O.J. Simpson incident was the only piece of anecdotal evidence of actual confusion. The court concluded a single incident was insufficient to establish a likelihood of confusion. We disagree with the district court's ruling.

[¶ 23] According to the record, Muggerud listed eight people who had inquired whether the two companies were affiliated and at least four other specific instances evidencing confusion. We cannot determine whether those examples prove actual confusion in the

marketplace. However, KAT Productions has met its burden of showing a genuine issue of material fact to overcome a ruling on summary judgment in favor of Kat Country on this issue. The fact-finder must determine whether there is adequate evidence of actual confusion in the marketplace to sustain a finding of likelihood of confusion.

(6) **The Degree of Care Reasonably Expected of the Plaintiff's Potential Customers.**

[¶ 24] The last factor relevant in determining a likelihood of confusion is the background concerning the condition of the purchase. By examining the condition of the purchase, we consider what type of service is being offered and what type of care is reasonably expected from an ordinary purchaser. *Beer Nuts,* 711 F.2d at 941. If an ordinary purchaser consists of an adult consumer who would likely spend a significant amount of money on the service and a significant amount of time investigating the service, the likelihood of confusion is reduced. *See Woodroast Systems,* 793 F.Supp. at 915; *Mutual of Omaha,* 836 F.2d at 401.

[¶ 25] According to Kat Country, consumers of video and audio productions are sophisticated buyers who investigate the best medium for their product—print, radio, or television—the content of the material, and the producer of the final product. Kat Country argues, because the ordinary purchaser uses a high degree of care, the likelihood of confusion is decreased.

[¶ 26] KAT Productions does not disagree that the later stages of a video purchase require time and money. However, according to KAT Productions, in the initial stage of the purchase, the ordinary purchaser is not sophisticated and does not use a high degree of care in choosing its producer. KAT Productions contends the ordinary purchaser is a once-in-a-lifetime buyer, such as a tribal counsel member or an elected official, who is not informed on video and audio productions. In its argument, KAT Productions outlines a purchase scenario in which a potential customer seeking to produce a program on alcohol abuse, looks in the yellow pages to find a producer. In the yellow pages, the potential customer sees the KAT Productions advertisement with the name "KAT," and the feline head. The potential customer affiliates the designation with Kat Country. The potential customer perceives Kat Country as an organization promoting bar and alcohol advertisements, and decides that company would not be suitable, so they turn to the next listing.

[¶ 27] The district court agreed with Kat Country, finding purchasers exercise a high degree of care making confusion less likely. We agree with the district court that due to the nature of the product, it seems reasonable that purchasers exercise a high degree of care. However, a disputed issue of fact exists concerning the level of sophistication of an ordinary purchaser, and the degree of care used by an ordinary purchaser in the initial stages of finding a producer. Thus, this is another factor in which genuine issues of material fact remain to be resolved at trial. Summary Judgment was inappropriate as to this factor.

[¶ 28] Throughout its decision, the district court made several findings of fact, and concluded there was no likelihood of confusion. Although two of these issues were rightfully decided as undisputed on the evidence submitted, there remain disputed issues of fact with respect to similarity of the marks, proximity of the products, evidence of actual confusion, and degree of care used by an ordinary purchaser. *See, e.g., Nike,* 6 F.3d at 1233 (remanding the case for trial because the district court inappropriately resolved disputed issues of fact through summary judgment). Summary judgment in favor of either party is inappropriate. We reverse the dismissal of KAT Production's complaint, and remand the case for trial. At trial, we instruct the fact-finder to make findings on the remaining issues of fact, and then examine the matter as a whole, to find if there is a likelihood of confusion between KAT Productions' and Kat Country's tradenames and trademarks.

[¶ 29] VANDE WALLE, C.J., and MARING, MESCHKE and SANDSTROM, JJ., concur.